517 P.2d 1029

STATE of Utah, Plaintiff and Respondent,

v.

Howard Smith BENNETT, Defendant and Appellant.

No. 13296.

Supreme Court of Utah.

Dec. 26, 1973.

Robert Van Sciver, Salt Lake City, Thorit Hatch, Helper, for defendant-appellant.

Vernon B. Romney, Atty. Gen., David L. Wilkinson, M. Reid Russell, Asst. Attys. Gen., Salt Lake City, for plaintiff-respondent.

ELLETT, Justice:

This is an appeal by the defendant from a jury verdict finding him guilty of murder in the second degree. He claims error at trial in four particulars, viz.:

1. Violation of his so-called Miranda rights.

2. The court required him to answer regarding a prior felony conviction while he was a witness in his own behalf.

3. There was insufficient evidence to sustain the verdict rendered.

4. The giving of an abstract instruction on involuntary manslaughter.

There is no substantial dispute in the facts of this case. Both the victim and the defendant were drunk and were placed in the same drunk tank.[1] The victim was placed in the cell about seven p. m. and the defendant about one hour later. After an elapse of approximately three hours a deputy sheriff checked the cell and discovered the victim lying in a pool of blood on the floor and the defendant asleep on a wall bench. The officer awoke the defendant and asked him, "What happened?" The

---

1. A cell especially constructed for detaining prisoners until they become sober.

defendant replied, "I killed the son of a bitch last night; he would not shut up." A few moments later the defendant began shouting, "Call the newspapers. The police did it."

The Miranda case,[2] despite the mischief it has wrought, offers no aid to the defendant. Even in courts where it is thought to be valid it would not apply to the facts of this case. The defendant was not in custody at the time for the crime of murder. He was being detained on another charge. The officer simply wanted to know what had occurred.

The defendant voluntarily testified and on cross-examination was required to admit that he had theretofore been convicted of a felony, to wit: Murder in the second degree. He claims that it was error to require him to answer regarding that prior conviction and cites Rule 21 of the Rules of Evidence adopted by this court prior to trial to sustain his position. That rule reads:

Evidence of the conviction of a witness for a crime not involving dishonesty or false statement shall be inadmissible for the purpose of impairing his credibility, *except as otherwise provided by statute*. [Emphasis added.]

Our statute[3] at the time of trial and for over seventy years prior to that reads: " . . . [A] witness must answer as to the fact of his previous conviction of felony," and further provides[4] that a defendant in a criminal case may be cross-examined by counsel for the State the same as any other witness.

Rule 21 by its terms does not apply where a statute otherwise provides; and since the statute does otherwise provide, there was no error in requiring the defendant to answer to his prior conviction of murder in the second degree.

It seems that the defendant did not so much mind telling the jury that he had been convicted of a felony as he did in telling them that it was murder in the second degree.

The matter was before this court in the case of State v. Kazda,[5] where it was held:

. . . When an accused voluntarily takes the witness stand he may be asked whether or not he has ever been convicted of a felony. Such a question is sanctioned by statute. If the accused answers in the affirmative, he may be asked the nature of the felony . . . .

2. Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

3. Sec. 78–24–9, U.C.A.1953.

4. Sec. 77–44–5, U.C.A.1953.

5. 14 Utah 2d 266, 268, 382 P.2d 407 (1963).

Rule 21 does not overrule the statute, nor does it change the ruling in the Kazda case. Until the statute is amended, it would appear that a defendant who voluntarily takes the witness stand must answer to the fact of a prior conviction of felony if such is the case.

The defendant does not deny that he is guilty of involuntary manslaughter in that without malice he killed the victim while he was in the commission of an unlawful act not amounting to a felony, to wit, a battery. He complains of Instruction No. 5 given by the court to the jury, which is somewhat in the language of the statute defining the crime of involuntary manslaughter. It reads thus:

Involuntary manslaughter is an unintentional killing which occurs in the commission of an unlawful act not amounting to a felony, or in the commission of a lawful act which might produce death in an unlawful manner and without due caution and circumspection. An unlawful act not amounting to a felony is any crime not punishable by imprisonment in the state prison. A person acts without due caution and circumspection when his acts in a given instance evidence a marked disregard for the safety of others.

His exception to this instruction was as follows:

. . . We except to Instruction No. 4 under the standard for reasonableness and provocation. I think Judge Crockett's concurring opinion spells out that there is no standard as to what is reasonable. The standard is what, if the defendant was affected and if he therefore is no longer a cognizant person but reacting emotionally is entitled to be convicted of voluntary manslaughter. I think Instruction No. 5 also ought to have the statement in there, the Court did say in the course of an unlawful act which is a misdemeanor, there ought to be some amplification, battery is a misdemeanor and can be considered an unlawful act.

It is to be noted that while the defendant somewhat criticized the instruction given, he did not proffer a better one to the court. A defendant in such a case is in a poor position to argue that this court should reverse a trial judge when the mischief complained of, if any there be, could have been avoided by a little timely assistance given to the judge by the objector.[6]

While the instruction contained language not related to the evidence given regarding involuntary manslaughter, the jury could not have been misled. If any-

6. See State of Utah v. McCarthy, 25 Utah 2d 425, 483 P.2d 890 (1971).

thing was amiss, it was in telling the jury that the defendant could be convicted of the crime of involuntary manslaughter if an unintentional killing occurred while defendant was in the commission of a lawful act, etc., without due caution and circumspection. This would but give another idea to the jury that they might find other ways to convict the defendant of involuntary manslaughter than that which the evidence would support. However, since the defendant wanted to be convicted of this lesser included offense, he ought not be heard to complain about this side help from the judge—if such it be.

The judge instructed the jury on the elements of murder in the second degree and also of voluntary manslaughter, and there are no assignments of error in that regard. The court told the jury that if they were not satisfied beyond all reasonable doubt that all elements of second degree murder had been established, they could not find the defendant guilty of that crime and should then consider whether the elements of the crime of voluntary manslaughter had been established beyond a reasonable doubt. A similar instruction required them to consider involuntary manslaughter if they were not convinced beyond a reasonable doubt that all elements of voluntary manslaughter had been established.

By finding the defendant guilty of murder in the second degree, the jurors were apparently convinced that the killing was not limited to the elements constituting the crime of involuntary manslaughter.

The defendant argues that the elements of murder in the second degree are not sustained by the proof given at trial.

Murder in the second degree as defined in the statute existing at the time of the commission of the crime herein is the unlawful killing of a human being with malice aforethought. Malice may be either express or implied.[7]

■ Was there sufficient evidence to convince the jury beyond a reasonable doubt that the defendant without provocation intentionally and unlawfully killed the victim?

The evidence showed that the defendant was 33 years of age and weighed 230 pounds, while the victim was 62 years old and weighed only 145 pounds. It further showed that blood was splattered all over the walls of the cell and on the floor and that the victim's jaw bone was broken in several places and his frontal chin bone fractured. His liver was lacerated and torn, and this injury would have caused his death had he not drowned in his own blood. He sustained multiple abrasions on the left forehead, the right upper eyelid, the right temple, the left jaw, the back, the neck, the chin, the upper chest, and both sides of the rib cage.

7. Sec. 76–30–2, U.C.A.1953.

**348**

The defendant was examined by a doctor soon after the killing, and no visible marks were found on his person to indicate that he had been in a fight, nor did the defendant complain of having sustained any injuries.

At the time of the original arrest the defendant was truculent and beligerent and used vulgar, abusive, and threatening language to the arresting officer. He kicked and smashed the two-way radio in the officer's car and threatened to slash the "pretty face" of the officer's daughter. He threatened harm to the officer's wife and told the officer that he had a "forty-five" and that "I'll have you on your hands and knees and you'll be praying when I pull the trigger. Because I'll blow your God damn brains out. This is not a threat, this is a promise."

This was the mood of the defendant when he was placed in the cell with the victim, and with this attitude on his part shown to the jury, we cannot say that from the evidence reasonable men could not have found that with no sufficient provocation the defendant unlawfully beat the victim, either with the intent to kill him or to do such great bodily harm to him that death was likely to be the result. In either case, the verdict would be proper.[8]

The judgment is affirmed.

CALLISTER, C. J., and HENRIOD, CROCKETT and TUCKETT, JJ., concur.

8. State v. Canfield, 18 Utah 2d 292, 422 P.2d 196 (1967); State v. Russell, 106 Utah 116, 145 F.2d 1003 (1944).