Elwood K. McFARLAND, Plaintiff and Respondent,

v.

SKAGGS COMPANIES, INC., Defendant and Appellant.

No. 18352.

Supreme Court of Utah.

Feb. 1, 1984.

ing unable to locate the desired article, plaintiff left the store.

Plaintiff was unaware that as he searched for the antenna plug, a Skaggs security officer by the name of Anita Avondet was watching him from behind a one-way mirror. Miss Avondet thought she saw plaintiff take an electrical part off the rack and place it in the right-hand pocket of his raincoat. Acting upon this belief, she followed plaintiff outside the store, where she immediately accosted him.

The litigants gave conflicting accounts of their confrontation outside the store and the events that followed. Under familiar rules of appellate procedure, we are constrained to review those accounts in the light most favorable to the jury's verdict and the party prevailing below, which in this case is the plaintiff.[1]

According to plaintiff, at the time Miss Avondet accosted him she was not wearing any identifying badges or clothing that would in any way denote her official capacity as a security officer. Furthermore, she did not verbally identify herself as a security officer; she merely stated, "Sir, I want to talk to you." Being thus unaware of her official status and thinking she might be trying to sell him something, plaintiff replied, "I'm not interested," and at the same time attempted to step around her. In doing so, he extended his arm to brush her away. At this point, again without identifying herself or her objective, Miss Avondet grasped plaintiff's coat lapels and began to scuffle with him. Reflecting upon the circumstances surrounding the confrontation, plaintiff ceased scuffling and indicated to Miss Avondet that he understood what she apparently wanted, but that she was making a big mistake. Miss Avondet responded that she was not paid to make mistakes, whereupon she requested that plaintiff accompany her back into the store and to the manager's office.

Stephen G. Morgan, Salt Lake City, for defendant and appellant.

Findley P. Gridley, Bruce Baird, Ogden, for plaintiff and respondent.

HALL, Chief Justice:

This is an appeal from a jury verdict and judgment in favor of plaintiff Elwood K. McFarland in a case of false arrest.

On January 9, 1980, plaintiff, a dentist and resident of Ogden, Utah, entered a Skaggs Drug Center in Ogden for the purpose of purchasing a television antenna plug. Upon entering the store, plaintiff proceeded to the aisles where the electrical appliances and parts were displayed. After searching several display racks and be-

---

**1.** *Hutcheson v. Gleave,* Utah, 632 P.2d 815 (1981); *Cintron v. Milkovich,* Utah, 611 P.2d 730 (1980).

Once inside the manager's office, Miss Avondet telephoned the police and reported the incident as a "shoplifting case." She then pointed to plaintiff's right-hand coat pocket and asked that he remove from that pocket whatever he had taken from the store. Plaintiff thereupon produced the contents of the pocket, which consisted of no more than a set of keys. No further search was made of plaintiff's coat or his person, though plaintiff encouraged Miss Avondet to do so. Other store personnel searched along plaintiff's route through the store and in the area of the scuffle, but failed to find the suspected stolen merchandise.

A short time later, Ogden police officers arrived to investigate the incident. The extent of their investigation was to question plaintiff and Miss Avondet as to what had occurred. Apparently believing the account given by Miss Avondet over that given by plaintiff, the senior officer took her aside (out of the presence of plaintiff) and informed her that she had a good case for assault if she desired to press charges. Miss Avondet indicated, however, that inasmuch as she did not sustain any injuries as a result of the scuffle, she did not wish to press charges. Plaintiff overheard this conversation and later testified that it was the only reference ever made by anyone with regard to an assault.

After the private discussion between the officer and Miss Avondet, plaintiff was released. He was never formally charged with any crime as a result of this incident, nor was he ever brought before a magistrate.

On November 18, 1980, plaintiff instituted this suit for false arrest against Skaggs, Inc., seeking $10,000 in general damages and $50,000 in punitive damages. At trial, Skaggs (hereinafter defendant) defended on the theory that Miss Avondet was justified in arresting plaintiff by reason of the privilege granted store owners to detain and search suspected shoplifters[2] and by reason of the privilege of a private citizen to make a citizen's arrest of one who has committed an assault.[3]

Plaintiff's position at trial, with respect to defendant's first defense (i.e., merchant's arrest privilege), was that Miss Avondet did not have the requisite "probable cause to believe" that plaintiff had stolen merchandise from the store, and thus the merchant's privilege could not be asserted. The jury returned a verdict in favor of plaintiff's position.

As to defendant's second defense (i.e., citizen's arrest privilege), plaintiff moved for a directed verdict of false imprisonment on the assault arrest, inasmuch as the citizen's arrest privilege was abused and, moreover, lost due to defendant's failure to charge the assault offense within a reasonable period of time. The court denied this motion, reasoning that the arrest was merely "transitory." The court also refused to give an instruction requested by plaintiff, which would have directed the jury that unless plaintiff was taken promptly before a magistrate the citizen's arrest privilege was lost.

The instructions given to the jury relative to this latter defense were that the defendant had the burden of proving "beyond a reasonable doubt" that plaintiff did in fact commit a criminal assault upon Miss Avondet and that if defendant failed in that burden, the arrest for assault was unlawful because "[t]here is no statutory privilege protecting against an unlawful arrest for assault based on one having 'probable cause to believe' an assault had been committed." Based on the instructions as well as the evidence adduced with regard to this issue, the jury found in plaintiff's favor on this defense also.

The jury awarded plaintiff $10,000 in general damages and $25,000 in punitive damages. Defendant's motion for a new trial was denied and this appeal ensued.

On appeal, defendant raises the following points: (1) the court committed reversi-

---

**2.** U.C.A., 1953, §§ 78–11–17, 78–11–18, 76–6–603, 76–6–604 (Supp.1983).

**3.** U.C.A., 1953, § 77–7–3.

ble error by instructing the jury that defendant must prove "beyond a reasonable doubt" that plaintiff committed an assault upon Miss Avondet in order to justify the assault arrest; (2) the court's instruction that no "probable cause" privilege exists for a private arrest for assault was also an error of reversible magnitude; and (3) this Court should reconsider its holding in *Terry v. Zions Co-op. Mercantile Institution* [4] that a punitive damage award is sustainable upon a finding of "malice in law."

We first consider plaintiff's rejoinder to points one and two above regarding the assault arrest. Plaintiff answers these points with the same argument he presented at trial in support of his motion for a directed verdict of false imprisonment, to wit: whatever privilege defendant might have had to arrest plaintiff for assault was abused and lost due to defendant's failure to charge plaintiff with the offense within a reasonable period of time. Plaintiff contends that this Court should reverse the trial court's denial of his motion in this regard and thereby moot defendant's arguments respecting the assault.

Plaintiff's argument is purportedly based upon a widely accepted rule that has been expressed in this state in specific statutory terms:

> When an arrest is made without a warrant by a peace officer or private person, *the person arrested shall*, without unnecessary delay, *be taken to the magistrate* in the precinct of the county or municipality in which the offenses occurred, and an information, stating the charge against the person, shall be made before such magistrate.... [Emphasis added.] [5]

Plaintiff's reliance upon the foregoing statutory provision is not completely warranted. While the privilege to make a lawful arrest is certainly abused by an unrea-

sonable delay in the presentment of the prisoner before a magistrate, it is not so certainly abused in a case such as this where the prisoner is released from custody and charges are never brought against him. Plaintiff has failed to recognize this important distinction, the effects of which, in terms of false imprisonment liability, are demonstrated thus:

> In the case of a lawful arrest without a warrant, the person making the arrest must present the prisoner promptly before a magistrate. An unreasonable delay in this respect will constitute an abuse of the privilege and will render the actor liable for that portion of the imprisonment which is in excess of the reasonable period allowed for such presentment. [6] In addition, *if the person making the arrest does not present the prisoner to a magistrate at all, but releases him without such presentment, the actor is liable for the arrest even though it had been lawful when made, unless the person arrested and released consented to or requested the release without presentment, or unless such person were actually guilty of the offense for which he was arrested. In the latter two cases, the person has not been harmed and since the arrest was originally lawful, it does not become unlawful by the release.* [7] [Emphasis added.]

Thus, the legitimacy of plaintiff's position with respect to the assault arrest is contingent upon a negative determination of the following questions: (1) Did plaintiff consent to or request his release without the requisite presentment? (2) Was plaintiff actually guilty of the assault offense?

■ The "consent to be released" concept has been explained as follows:

---

4. Utah, 605 P.2d 314 (1979).

5. U.C.A., 1953, § 77–7–23.

6. Regarding the extent of civil liability occasioned by this type of misconduct following a lawful arrest, *see* Restatement (Second) of Torts

§ 136 (1965); F. Harper and F. James, The Law of Torts § 3.18 (1956).

7. F. Harper and F. James, The Law of Torts § 3.17 (1956). *See also* W. Prosser, Law of Torts § 25 (4th ed. 1971); *Atchison, T. & S.F. Ry. v. Hinsdell,* 76 Kan. 74, 90 P. 800 (1907).

The other's consent to be released may be shown either by his request or by his accepting the release if so offered to him as to indicate that he is free to accept or reject it. If, on the other hand, the actor by word or conduct indicates that the other must accept his release, the other's mere acquiescence is not consent.[8]

In the instant case, plaintiff gave the following account of his release from defendant's custody:

Q. Okay. Now after the officer and the lady came back into the office, what then happened?

A. *She said I was free to go.* The officer said I was free to go. She didn't turn me loose. The officer did.

Q. And did you respond to that at all? Did you say anything in response, or just what did you do by way of reaction?

A. *I got up and left.* [Emphasis added.]

This account clearly evidences plaintiff's voluntary consent (acceptance) to be released from defendant's custody.

Having thus determined the question of consent affirmatively, we find it unnecessary to address the second question regarding plaintiff's guilt. We conclude that the act of releasing the plaintiff without first taking him before a magistrate did not itself constitute an abuse of the privilege to arrest and therefore did not give rise to liability for false imprisonment. However, one question remains to be answered in this regard and that is whether the assault arrest itself was effected in a lawful manner.

The foregoing analysis presumes the lawfulness of the assault arrest. Indeed, the analysis would have no application if the arrest itself were unlawful or improper.

To be lawful, an arrest must be effected in accordance with statutory dictates. U.C.A., 1953, § 77–7–6 requires: "The person making the arrest shall inform the person being arrested of his intention, cause and authority to arrest him."[9]

According to the version of the facts heretofore adopted, plaintiff's detention (arrest) was not accomplished in conformance with the foregoing statutory provision. Miss Avondet gave no indication at the time she accosted plaintiff of her intention to arrest him for assault or any other offense or of her authority to do so. With specific regard to the purported assault arrest, plaintiff testified that no mention was ever made in his presence of assault charges or an arrest for that purpose. Even assuming the veracity of Miss Avondet's conflicting testimony in this regard (to wit: that she informed plaintiff while in the manager's office that he was being placed under citizen's arrest for assault), the arrest would still fall short of the statutory mandate, which requires, at least under circumstances as are present here, that the notice of "intention, cause and authority" be given at the time the prisoner is detained or the arrest is effected, rather than sometime later during the period of detention (*e.g.,* during the plaintiff's detention in the manager's office). We therefore conclude that defendant failed to perfect whatever privilege it might have had to arrest plaintiff for assault by failing to effect the arrest lawfully in accordance with the statutory standards. Accordingly, we hold that plaintiff's arrest was not justified upon the privilege of a private citizen to make a citizen's arrest of one who has committed an assault.

---

**8.** Restatement (Second) of Torts § 136 comment f (1965).

**9.** This statute also provides certain exceptions to the notice requirement:
Such notice shall not be required when:
(1) There is reason to believe the notice will endanger the life or safety of the officer or another person or will likely enable the party being arrested to escape;
(2) The person being arrested is actually engaged in the commission of, or an attempt to commit, an offense; or
(3) The person being arrested is pursued immediately after the commission of an offense or an escape.
These exceptions are not applicable in the instant case.

This holding obviates the necessity to address defendant's contentions regarding the propriety of the trial court's instructions to the jury on the assault issue.

We turn now to defendant's final point of contention, which is that the better standard for determining the availability of punitive damages in an action for false imprisonment is the "actual malice" standard, rather than the "malice in law" standard adopted by this Court in *Terry v. Zions Co-op. Mercantile Institution, supra,* and employed herein by the trial court to sustain its punitive damages award. Defendant argues that the *Terry* decision should be reconsidered and overruled inasmuch as it contradicts the purpose of the Utah shoplifting statutes and represents but a mere minority view.[10]

In *Terry,* a mother and her daughter were arrested in Z.C.M.I. by a security officer for the daughter's suspected shoplifting. The daughter was later acquitted, and the charges against her mother were dropped. Subsequently, the pair sued Z.C.M.I. for false imprisonment and malicious prosecution. The jury found that Z.C.M.I. had reasonable cause to detain the daughter, but not the mother. Accordingly, it found no cause of action as to the daughter, while awarding the mother $6,500 in general damages and $15,000 in punitive damages.

On appeal, Z.C.M.I. contended, as defendant does in the instant case, that the award of punitive damages was improper because there had been no showing of "actual malice."[11] The Court rejected this argument holding that "malice in law"[12] was suffi-

cient to support an award of punitive damages in a false imprisonment action. The Court went on to hold:

The consequence of the application of this standard to the actions of a merchant, merchant's employee, servant or agent in arresting an alleged shoplifter is that *malice in law, sufficient to support punitive damages, will be implied from a lack of probable cause in effecting the arrest.*[13] [Emphasis added.]

Furthermore, the Court held that the burden of proving probable cause was upon the merchant.[14]

The rationale behind defendant's opposition to the *Terry* standard (malice in law) and enthusiasm for the "actual malice" standard is drawn primarily from a recent law review article entitled "Recent Developments in Utah Law."[15] In that article, the following observations and criticisms are made with regard to the adoption of "malice in law" rather than "actual malice" as the standard for allowing punitive damages:

The actual malice rule creates three tiers of liability. If the merchant has probable cause to detain a patron, no liability arises. If the merchant acts without probable cause, but in good faith, liability arises only for compensatory damages. Liability for punitive damages, however, would arise only when the merchant's act is intentionally or recklessly malicious.

The actual malice rule is preferable for several reasons. First, by limiting punitive damages to egregious false imprisonments, the rule better comports with

10. Boyce, "A Thumbnail Sketch of the Utah Supreme Court Decisions, 1979–1980," Utah B.J., Dec. 1981, at 25.

11. "Actual malice" or "malice in fact" was defined by this Court in *Terry* as willful and malicious misconduct. 605 P.2d at 327. It has also been commonly described as an act done with evil intent and with the purpose of injuring. *See Gilmer v. Playboy Club of Denver, Inc.,* Colo.App., 513 P.2d 1065 (1973).

12. "Malice in law" was defined by the *Terry* Court as follows:

[M]alice in law does not consist of personal hate or ill will of one person towards another but rather refers to that state of mind which is reckless of law and of the legal rights of the citizen in a person's conduct toward that citizen.
605 P.2d at 327.

13. *Id.* at 327–28.

14. *Id.* at 321–22.

15. "False Imprisonment—Punitive Damages May Be Awarded As A Matter of Law," 1980 Utah L.Rev. 694 (1980).

the notion that punitive damages are appropriate only for aggravated torts. Second, the actual malice rule allows for a fairer allocation of the burden of proof. The Utah court was correct in holding that the defendant must prove probable cause; the plaintiff would otherwise face the difficult task of proving a negative—the absence of probable cause. However, it is both practical and logical to place the burden of proving actual malice on the plaintiff, and basic fairness demands that a party seeking to *punish* another should bear the burden of proof. Moreover, the actual malice rule is consistent with the apparent intent of the Utah Legislature to give the merchant greater protection against the shoplifter.

. . . .

The very real problem of shoplifting pits two important considerations against each other—the right of the merchant to protect his inventory and the right of the citizen to be free from unwarranted detention and accusation. The common law rule of strict tort liability protected the patron, but at the expense of the merchant's property interest. On the other hand, absolute immunity for the merchant would go too far in allowing one private citizen the right to detain, search and question another.

The plaintiff in *Terry* suffered damage, for which she deserved compensation. However, by sanctioning unrestricted punitive damages for a good-faith mistake, the *Terry* court tipped the balance too far in favor of the patron and against the merchant. To remedy this imbalance, the court or the legislature should adopt the actual malice rule. It protects the interests of both merchant and patron without opening the door to unwarranted punitive damage recoveries.[16]

16. *Id.* at 699–700.

17. W. Prosser, Law of Torts § 11 (4th ed. 1971).

18. *See Gilmer v. Playboy Club of Denver, Inc., supra* n. 11; *Consolidated Sales Co. v. Malone,* Ky., 530 S.W.2d 680 (1975); *Guion v. Associated*

Defendant draws further support for its position from another scholarly source, Professor William Prosser's *The Law of Torts,* wherein the following is observed:

Because of the malevolent intentions which usually accompany false imprisonment, or at least the reckless disregard of the plaintiff's interests, it is usually a proper case for the award of punitive damages; but *where any such element of bad intent or wanton misconduct is lacking, and the imprisonment is the result of a mere mistake, either as to identity of the party or as to the propriety of arrest or imprisonment, punitive damages are denied.*[17] [Emphasis added.]

Though defendant has not cited a single case to support its position on this issue, we have discovered through our own research that many such cases do exist. In fact, it appears that defendant's view is the majority rule.[18]

In light of the apparent weight of authority and persuasive scholarly reasoning in support of defendant's position, we find that a sufficient and sound basis exists for departing from the malice in law standard followed in *Terry.* Accordingly, we adopt as the appropriate standard for determining the availability of a punitive damage award in an action for false imprisonment that of "malice in fact" or "actual malice." Furthermore, in the instant case, it follows that the requisite finding of "actual malice" cannot be implied from the absence of probable cause in effecting the arrest.

A further counterpoint raised by plaintiff that we must address at this juncture is that if this Court overrules the "malice in law" standard established in *Terry,* it is obligated to do so prospectively. There is no merit to this contention.

This Court has held that *"[o]rdinarily an overruling decision has retroactive oper-*

*Dry Goods Corp., Etc.,* 56 A.D.2d 798, 393 N.Y. S.2d 8, 9 (App.Div.1977), *aff'd.,* 43 N.Y.2d 876, 403 N.Y.S.2d 465, 374 N.E.2d 364; *F.B.C. Stores, Inc. v. Duncan,* 214 Va. 246, 198 S.E.2d 595 (1973).

ation." [19] (Emphasis added.) We have also recognized, however, that under *some* circumstances "an overruling decision will operate in the future only." [20] The leading case establishing such a doctrine is a United States Supreme Court decision entitled *Great Northern Railway v. Sunburst Oil & Refining Co.*[21] The rule established in that case, known as the *Sunburst Doctrine*, has been summarized previously by this Court as follows:

> The rule is based upon the proposition that where persons had entered into contracts and other business relationships based upon *justifiable reliance* on the prior decisions of courts, those persons would be substantially harmed if retroactive effect were given to overruling decisions. An additional factor was that retroactive operations might greatly burden the administration of justice.[22]

The record in this case does not support a decision limiting the effect of this case to future application. There is no showing of reliance upon the former standard articulated in *Terry* or of any resulting burden to the administration of justice. We therefore hold that the Sunburst Doctrine does not preclude application of the new "actual malice" standard in the present case.

In accordance with our resolution of the various issues in this appeal, we affirm the trial court in all respects, except as to the award of punitive damages. In regard thereto, the case is remanded for the limited purpose of trying the issue of punitive damages under the newly adopted standard of "actual malice."

STEWART, OAKS, HOWE and DURHAM, JJ., concur.

---

19. *State Farm Mutual Insurance Co. v. Farmers Insurance Exchange*, 27 Utah 2d 166, 493 P.2d 1002, 1003 (1972).

20. *Id.*

21. 287 U.S. 358, 53 S.Ct. 145, 77 L.Ed. 360 (1932).

22. *Supra* n. 19.