**The STATE of Utah, Plaintiff and Respondent,**

v.

**Nicholas BANNER, Defendant and Appellant.**

**No. 20371.**

Supreme Court of Utah.

April 14, 1986.

Walter F. Bugden, Jr., Salt Lake City, for defendant and appellant.

David L. Wilkinson, Sandra L. Sjogren, Roger D. Sandack, Salt Lake City, for plaintiff and respondent.

HALL, Chief Justice:

Defendant, Nicholas Banner, was found guilty by a jury of committing sodomy upon a child, a first degree felony, in violation of U.C.A., 1953, § 76–5–403.1 (Supp. 1983), and sexual abuse of a child, a first

degree felony, in violation of U.C.A., 1953, § 76–5–404 (Supp.1983). Our resolution of this appeal requires that we reach two of the issues presented by defendant: whether he was denied a speedy trial and whether the lower court erred in failing to exclude evidence of defendant's prior convictions.

### I.

Defendant was arrested on December 5, 1983, after being charged in a two-count information with sexual abuse of a child (hereinafter count one), and sodomy upon a child (hereinafter count two). During defendant's initial appearance on December 6, 1983, the circuit court judge appointed counsel to represent defendant.

Defendant first met his attorney on December 13, 1983, the date initially set for the preliminary hearing, and informed counsel of the existence of some alibi witnesses. The preliminary hearing, however, was continued to December 20 after the State requested increased bail based upon an indication that defendant had a prior criminal record under another name.

Defendant was bound over to district court and arraigned on December 23, at which time he entered a plea of not guilty. Trial was set for February 14, 1984. On or about January 26, defendant's counsel visited defendant in jail and informed him that the alibi witnesses had not yet been contacted.

An investigator testified at a pretrial hearing that he was first assigned by defendant's counsel to locate the alibi witnesses on January 31 and actually interviewed two of the witnesses for the first time on February 2. The investigator testified that Jim Oxin, the bartender at the tavern where defendant contended he was at the time the crimes were alleged to have occurred, remembered defendant and the evening in question, but could not pinpoint the incident in question. The record fails to indicate whether the tavern's owner, Gary, remembered whether defendant was at the bar the night of the incident. It also appears the investigator did not talk to another witness, Paula or Paulette, who at some point left the state without leaving a forwarding address. Therefore, five days prior to trial, counsel advised defendant to plead guilty. Defendant testified that he declined this invitation.

On February 14, 1984, the prosecutor told the court that there was going to be a change of plea. Neither defendant nor his counsel was present. The case was eventually continued to March 6, at which time defendant met with his counsel for the first time since before the trial date. Defendant testified that when he asked what happened to his trial he was told by his counsel that it was past that stage and that he had to plead guilty. Defendant pleaded guilty, and sentencing was set for March 29, but was then continued on defendant's motion to April 12. At the April 12 hearing, defendant asked Judge Wilkinson to grant him new counsel and to allow him to withdraw his guilty plea. Both motions were denied, and sentencing was again continued until April 26 so the parties could prepare memoranda on the new sentencing statute for sodomy upon a child.

On April 25, 1984, David Drake entered his appearance as defendant's new private counsel "for the specific purpose of representing Defendant in his sentencing and/or or [sic] the setting aside of the guilty plea entered by Defendant in the above matter." And on April 26, sentencing was again continued on defendant's motion to May 22.

On May 22, 1984, defendant's guilty plea was set aside, and defendant's previous counsel was allowed to withdraw from the case. At some later time, a new trial date of July 12, 1984, was set.

Defendant's calls to Drake, after the setting aside of the guilty plea, were unreturned, and defendant's attempts to secure new counsel were unavailing. On July 10, 1984, Drake was allowed to withdraw from the case by Judge Banks, who did not require that substitute counsel appear in Drake's stead. On July 11, 1984, Drake visited defendant for the first time since the setting aside of the guilty plea. De-

fendant testified that he learned at this time for the first time that his trial was set for the following day. Defendant further testified that Drake gave him the names of three attorneys who could be court appointed and that Drake would make the proper arrangements with the legal defender's office before moving to San Diego that day.

No arrangements were made by Drake, and defendant's trial date passed without defendant appearing in court. On July 16, defendant contacted one of the attorneys suggested by Drake, but could not raise the attorney's fee. On August 10, 1984, defendant wrote Judge Wilkinson a letter requesting release from jail. Defendant testified that he would have written Judge Wilkinson sooner had Judge Wilkinson not previously refused to appoint substitute counsel at the April 12 hearing. On August 20, 1983, defendant was brought before Judge Banks, the legal defender's office was again appointed to represent defendant, and trial was set for September 5, 1984. Due to the conflict of interest between defendant and the legal defender's office, however, defendant's present counsel was appointed on August 27. Defendant met with his new lawyer for the first time on August 29, and at defendant's request the court set a new trial date of November 13, 1984.

On November 9, 1984, defendant's motion to dismiss for lack of a speedy trial and motion to exclude defendant's prior convictions were heard in part. Argument was continued to the nineteenth, and the trial was moved to December 4, 1984. The trial court denied both motions on November 21. In regard to defendant's motion to exclude his prior felony convictions, the court made no finding on the record that the admission of the prior convictions was more probative than prejudicial.

Defendant's case went to trial on December 4 and 5, 1984. The victim, "J," age eleven, testified that on the night in ques-

tion she was being babysat by her aunt. "J" fell asleep in a chair while watching TV. While sleeping, "J" felt two hands inside of her panties touching her vagina. She stated that she was too afraid to open her eyes. She then fell back asleep. The next thing "J" remembered was that she was lying on the floor and felt something move across her face from one cheek, across her mouth, to the other cheek. However, it did not go inside of her mouth. She opened her eyes and saw defendant kneeling over her wearing only underwear down around his knees. At the time "J" opened her eyes, defendant's erect penis was approximately four inches from her face.

At about that time, "J's" aunt came down the stairs. The aunt observed defendant slipping his penis back into his underwear. Defendant did not testify at trial.

Defendant was found guilty of count one and count two. He was sentenced to life without the possibility of parole for his conviction of count two and sentenced from one to fifteen years on count one. On January 14, 1985, defendant was resentenced to fifteen years to life on count two.

## II.

Defendant claims he has been deprived of his federal and state constitutional and state statutory rights to a speedy trial. The sixth amendment to the United States Constitution provides that "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial." [1] Article 1, section 12 of the Utah Constitution provides a similar guarantee.[2] In *State v. Knill*, we stated:

> Whether the federal right has been violated is determined by balancing the "[l]ength of delay, the reason for the delay, the defendant's assertion of his right, and the prejudice to the defend-

---

1. U.S. Const. amend. VI. The fourteenth amendment makes the guarantee applicable to the states. *Klopfer v. North Carolina*, 386 U.S. 213, 223, 87 S.Ct. 988, 993, 18 L.Ed.2d 1 (1967).

2. Utah Const. art. 1, § 12. The right afforded by the Utah Constitution is also guaranteed by U.C.A., 1953, § 77–1–6(1)(f).

ant." Similar considerations also apply under the Utah constitution.[3]

Applying these principles to this case,[4] we find that defendant's speedy trial rights have not been abridged.

As stated in *Barker v. Wingo*, the length of delay is to some extent a triggering mechanism which analytically is closely related to the reason for the delay.[5] The *Barker* Court then elaborated on the necessary balancing process required when considering the reason for the delay: different weights must be assigned to the varying justifications and reasons given for the delay. As the Court said:

A deliberate attempt to delay the trial in order to hamper the defense should be weighted heavily against the government. A more neutral reason such as negligence or overcrowded courts should be weighted less heavily but nevertheless should be considered since the ultimate responsibility for such circumstances must rest with the government rather than with the defendant. Finally, a valid reason, such as a missing witness, should serve to justify appropriate delay.[6]

Between December 5, 1983, the time at which defendant was arrested, and February 14, 1984, the date initially set for defendant's trial, the only delay which could be characterized as avoidable and attributable to the prosecution was a continuance for seven days to allow the prosecution to research whether or not defendant had a prior criminal record under another name. At the hearing on the speedy trial motion, defendant testified that his counsel made no objection to this delay.

On February 14, the day set for trial, the prosecutor told the trial judge:

Neil Gunnarson for the state. I spoke to Miss Palacios. She indicated there will be a change of plea. It was her request as I understand it. She was going to oppose the court about putting it on the change of plea calendar. She had some questions about a possible pending charge in California. We are here with our witnesses but—

. . . .

The Court: Is she here?

Mr. Gunnarson: I haven't seen her, your Honor. He was going to plead as charged to the one count. We dismissed the other one.

. . . .

The Court: All right. Set it up. Don't let it go too long here.

Neither defendant nor his counsel was present, and there is no evidence in the record suggesting that the prosecution had not been told by defendant's attorney that there would be a change of plea. A hearing was then set for March 5, 1984, at which the guilty plea was to be entered. Defendant claims that when the court suggested a hearing date of February 22, 1984, the prosecutor said he would be out of town. The next available time was on March 5, 1984. Defendant contends that since any prosecutor could have handled the change of plea, the additional twelve days requested by Mr. Gunnarson constituted avoidable delay attributable to the prosecution.[7]

---

3. Utah, 656 P.2d 1026, 1029 (1982) (quoting *Barker v. Wingo*, 407 U.S. 514, 530, 92 S.Ct. 2182, 2192, 33 L.Ed.2d 101 (1972) (citations omitted). The speedy trial right reserved under the Utah Constitution is no greater or lesser than its federal counterpart. In *State v. Weddle*, 29 Utah 2d 145, 147, 506 P.2d 67, 68 (1973), the Court enumerated six factors for analyzing federal and state speedy trial claims. The six factors there listed are in substance the *Barker* test, which today is used in analyzing both federal and state speedy trial claims. *See, e.g., Knill*, 656 P.2d at 1029.

4. "A balancing test necessarily compels courts to approach speedy trial cases on an *ad hoc* basis."

*Barker*, 407 U.S. at 530, 92 S.Ct. at 2192. *See also Weddle*, 29 Utah 2d at 147, 506 P.2d at 68.

5. *See* 407 U.S. at 530–31, 92 S.Ct. at 2192.

6. *Id.* at 531, 92 S.Ct. at 2192. (footnote omitted).

7. Defendant attaches significant importance to the fact that neither Ms. Palacios nor defendant was present when the March 5 hearing date was set. However, the tactical decisions made by defendant's counsel cannot be used to impugn the prosecuting attorney for requesting a hearing date when he would be available.

On March 6, 1984, defendant pleaded guilty, and sentencing was set for March 29, 1984. The delay in sentencing from March 29 to May 22, 1984, was at the request of defendant so he could research the new sentencing statute for sodomy upon a child and prepare his motion to set aside the guilty plea. Although a new trial date was not set on the twenty-second of May, the trial was subsequently set for July 12, 1984. The delay between the setting aside of the guilty plea and the July 12, 1983, trial date consisted of fifty-one days. Defendant did not object to the July 12 trial date.

Defendant attaches great significance to the fact that Judge Banks allowed Drake to withdraw from the case on July 10, two days prior to trial. However, Judge Banks did not know that defendant required appointed counsel. On April 25, 1984, defendant had private counsel make an appearance of record for the sole purpose of rendering aid during sentencing or the setting aside of the guilty plea. On May 22, 1984, when the guilty plea was set aside, defendant knew that his private counsel was not retained to represent him at trial, yet said nothing to the trial judge about needing new counsel. This was the same day that Ms. Palacios filed her notice of withdrawal from the case. Because defendant had previously obtained the withdrawal of his court-appointed counsel (Palacios) in favor of private counsel (Drake), the trial court was not aware of defendant's situation.

The second trial date was stricken because defendant had no counsel and had made no attempt to inform the court that he was unable to retain private counsel to represent him at trial. Subsequent to the July 12 trial date and prior to defendant's next court appearance, he continued trying to locate private counsel, yet his attempts were unavailing. Since defendant could not retain counsel, he wrote Judge Wilkinson, seeking release from jail so he could earn enough money to hire a lawyer. Once notified of defendant's dilemma, the court immediately brought defendant to court, appointed counsel, and set trial for September 5, 1984. Defendant's attempts to lay blame for this delay on the State, claiming that it failed to bring defendant into open court to question him concerning his representation, are not well taken. Defendant had previously obtained dismissal of his court-appointed counsel and failed to seek assistance from the court until mid-August.

Defendant's trial date was postponed from September 5, 1984, to November 13, 1984, on defendant's own motion. Moreover, the subsequent move of the trial date to December 4, 1984, was made in order to hear defendant's motion to dismiss for lack of speedy trial and defendant's pretrial motion to exclude evidence of defendant's prior convictions.[8]

In *State v. Velasquez*,[9] we held that when a prisoner acts to delay trial, he indicates his willingness to temporarily waive his right to speedy trial.[10] The rationale of *Velasquez* is applicable to much of the delay in this case. The substantial cause of the delay between defendant's arrest and defendant's trial was the result of defendant's own actions and, in accordance with the rule above noted, constituted a temporary waiver of his right to a speedy trial. These actions include the change of plea, the motions to continue to research the new sentencing statute, the motion to

---

8. The following colloquy took place at the hearing on the motions:

> The Court: All right. This is set for trial Tuesday, though. Why did you wait so long to bring these matters before the court?
> Mr. Bugden: Well, I don't know if I have a good explanation for that except I was aware that the arguments had to be made. I spoke to—
> The Court: You have been on this case since August, haven't you? I can't remember when.

> Mr. Bugden: Well, September 5th or September 1st.
> The Court: That's a couple of months.
> Mr. Bugden: That is my fault, then, I guess. I suppose that's on my shoulders.

9. Utah, 641 P.2d 115 (1982).

10. *Id.* at 116.

withdraw the guilty plea, defendant's failure to retain counsel for trial or inform the trial court that he needed new court-appointed counsel, defendant's subsequent motion to move the trial date from the fifth of September until mid-November, and finally the delay caused to hear defendant's motion to dismiss for lack of speedy trial and to exclude evidence of his prior convictions. The record indicates that there was no intentional or deliberate attempt to delay the trial in order to hamper defendant's defense, and defendant makes no such claim. The seven days required to investigate defendant's previous record under an alias and the twelve days of delay caused by Mr. Gunnarson's insistence on being at the hearing for the entry of defendant's guilty plea can perhaps best be characterized as negligent in nature.[11] In light of the relatively short period of this type of avoidable delay (nineteen days), we do not consider the delay sufficient to find that defendant's right to speedy trial was abridged. The only other significant delay not attributable to defendant was that required to calendar a trial. The delay in this case was fifty-three days (December 23, 1983, to February 14, 1984) for the first trial and fifty-one days for the second trial. These periods of time are necessary in a jurisdiction such as this and not at all unreasonable.

Assuming that defendant's August 10, 1984, letter to Judge Wilkinson requesting release from jail was an assertion of his right to a speedy trial, the assertion in this case is not of a particular weighty nature in the balancing process. Once defendant asserted his right, the court immediately responded by appointing counsel and setting a trial date.[12]

The Court in *Barker* also addressed how to factor prejudice into the speedy trial balancing test:

Prejudice ... should be assessed in the light of the interests of defendants which the speedy trial right was designed to protect. This Court has identified three such interests: (i) to prevent oppressive pretrial incarceration; (ii) to minimize anxiety and concern of the accused; and (iii) to limit the possibility that the defense will be impaired. Of these, the most serious is the last....[13]

There is no question that being incarcerated for twelve months prior to trial is oppressive and creates significant anxiety and concern for the accused. However, as noted above, in this case most of defendant's pretrial incarceration was due to delays caused by defendant's own acts. Consequently, the significance of the twelve months spent by defendant in jail as affecting our decision on whether he was deprived of his right to speedy trial is substantially reduced.

Moreover, defendant makes no persuasive allegation of prejudice from the delay on the ground that his defense was impaired. In his brief, defendant claims prejudice because he was not able to present an alibi defense. Defendant claims that failure of the investigator to contact his alibi witnesses in a timely fashion rendered the alibi defense unviable. The problem with defendant's contention is that he fails to connect the cause of the claimed prejudice to the alleged lack of speedy trial. The fact that defendant was unable to locate Paulette because of the investigator's delay was not caused in any respect by defendant's alleged lack of speedy trial. Moreover, the record indicates that the other alibi witnesses who were contacted could not substantiate defendant's alibi even prior in time to defendant's first scheduled trial. Thus, any prejudice during the December 4, 1984, trial was not caused by the delay in trial, but was instead caused by the fact that the witnesses defendant was

---

11. We *assume* that the twelve days of delay can be laid at the feet of the prosecution. As far as Mr. Gunnarson knew, defendant had waived his trial, and the hearing was only necessary to formalize the entry of the guilty plea.

12. *Cf. State v. Viles*, Utah, 702 P.2d 1175, 1176 (1985) (prisoner not denied speedy trial right granted by U.C.A., 1953, § 77–29–1).

13. 407 U.S. at 532, 97 S.Ct. at 2193 (footnote omitted).

able to locate could not substantiate his claimed alibi.

### III.

Defendant contends that the trial court erred by denying his pretrial motion to exclude evidence of his prior convictions.[14] Defendant sought the pretrial order from the court to prevent the State from impeaching defendant with his 1975 and 1976 felony convictions for assault with intent to commit rape if defendant chose to take the stand. Defendant's proffer for the record indicates that because the motion to exclude the convictions was denied he decided not to testify.

Before reaching defendant's contention, we find it necessary to address defendant's preservation of this issue in the proceedings below. Prior to December 10, 1984, many of the federal circuits held in well-reasoned cases that the failure of an accused to take the stand did not impair the preservation of such issues for purposes of appeal.[15] In *United States v. Cook*,[16] the court held that it would reach the issue because defendant stated his intention to testify on the record if the motion to exclude was granted. The court further stated "[i]n future cases, a defendant who does not make the record contemplated in Rule 103 can fairly be said to have abandoned the point." [17]

In *Luce v. United States*,[18] the Supreme Court overruled these cases holding "to raise and preserve for review the claim of improper impeachment with a prior conviction, a defendant must testify." [19] Inasmuch as this is the first time this Court has spoken out on the requirements surrounding preservation of objections to rulings on Rule 609 motions, and since the issue was preserved under many of the federal cases in effect at trial, *Luce* not having been decided until five days after trial, we reach the claimed error in this case.[20] Notwithstanding our decision to do so, we reserve judgment as to whether *Luce* is the better view.

The State contends that for years both Utah case law and statutory law have required that a witness must answer to the fact of his previous felony convictions and that an accused who takes the stand on behalf of himself is subject to the same forms of impeachment as any other witness. In *State v. Hougensen*,[21] we summed up the early history of confused case law surrounding impeachment by conviction in this state and held: "The following principles ... are here enumerated for the guidelines of the bench and bar: (1) Any witness may be asked on cross-examination whether he has been convicted of a felony." [22]

In *State v. Harless*,[23] the Court noted that the rationale for this rule

> derives from the idea that there is a basis in reason and experience why one may place more credence in the testimo-

---

**14.** A ruling of a court below on a matter within its judicial discretion will not be disturbed on appeal in the absence of a clear abuse of that discretion. *See State v. Gallegos*, Utah, 712 P.2d 207, 208–09 (1985).

**15.** *See, e.g., United States v. Lipscomb*, 702 F.2d 1049, 1069 (D.C.Cir.1983) (en banc); *United States v. Kiendra*, 663 F.2d 349, 352 (1st Cir. 1981); *United States v. Fountain*, 642 F.2d 1083, 1088 (7th Cir.), *cert. denied*, 451 U.S. 993, 101 S.Ct. 2335, 68 L.Ed.2d 854 (1981); *United States v. Toney*, 615 F.2d 277, 279 (5th Cir.), *cert. denied*, 449 U.S. 985, 101 S.Ct. 403, 66 L.Ed.2d 248 (1980); *United States v. Cook*, 608 F.2d 1175, 1186 (9th Cir.1979) (en banc), *cert. denied*, 444 U.S. 1034, 100 S.Ct. 706, 62 L.Ed.2d 670 (1980).

**16.** 608 F.2d at 1175.

**17.** *Id.* at 1186.

**18.** 469 U.S. 38, 105 S.Ct. 460, 83 L.Ed.2d 443 (1984).

**19.** *Id.* at 464.

**20.** *See* Utah R.Evid. 102. *Cf. United States v. Givens*, 767 F.2d 574, 577–79 (9th Cir.) (grossly unfair to apply *Luce* under these circumstances), *cert. denied*, —— U.S. ——, 106 S.Ct. 321, 88 L.Ed.2d 304 (1985).

**21.** 91 Utah 351, 64 P.2d 229 (1936).

**22.** *Id.* at 369, 64 P.2d at 238.

**23.** 23 Utah 2d 128, 459 P.2d 210 (1969).

ny of one who has lived within the rules of society and the discipline of the law than in that of one who has so demonstrated antisocial tendency as to be involved in and convicted of serious crime.[24]

Yet even in *Harless* the Court noted that the rule had been criticized since often the defendant who had a prior conviction had the choice of either not testifying or running the risk of being convicted on evidence of his earlier misdeeds.[25]

In 1870, a portion of the California Code of Civil Procedure was adopted in Utah,[26] which is now found in substance at section 78–24–9 of the Utah Code:

> A witness must answer questions legal and pertinent to the matter in issue, although his answer may establish a claim against himself; but he need not give an answer which will have a tendency to subject him to punishment for felony; nor need he give an answer which will have a direct tendency to degrade his character, unless it is to the very fact in issue or to a fact from which the fact in issue would be presumed. *But a witness must answer as to the fact of his previous conviction of felony.*[27]

This codification of Utah law was originally part of our code of civil procedure. However, the statute crept into the criminal context and was followed in a long line of criminal cases.[28] In *State v. Hansen*,[29] the

Court held that pursuant to the statute the prosecution could cross-examine a defendant not only on the fact of his previous convictions, but also concerning the nature and number of the previous convictions.[30]

On February 17, 1971, this Court adopted the Utah Rules of Evidence, effective July 1, 1971. Utah R.Evid. 21 provided:

> Evidence of the conviction of a witness for a crime not involving dishonesty or false statement shall be inadmissible for the purpose of impairing his credibility, *except as otherwise provided by statute.*[31]

In *State v. Bennett*,[32] the Court utilized the emphasized portion of the rule to reconcile the apparent conflict between Rule 21 and section 78–24–9:[33] "Rule 21 by its terms does not apply where a statute [section 77–24–9] otherwise provides...."[34]

On April 13, 1983, this Court adopted in substantial part the Federal Rules of Evidence, effective September 1, 1983.[35] Rule 609(a) provides:

> For the purpose of attacking the credibility of a witness, evidence that he has been convicted of a crime shall be admitted if elicited from him or established by public record during cross-examination but only if the crime (1) was punishable by death or imprisonment in excess of one year under the law under which he was convicted, and the court determines

---

**24.** *Id.* at 130, 459 P.2d at 211 (footnote omitted).

**25.** *Id.*

**26.** *Jennings v. Stoker,* Utah, 652 P.2d 912, 914 (1982).

**27.** U.C.A., 1953, § 78–24–9 (emphasis added). Defendant also refers us to section 77–44–5. That section provided in pertinent part: "If a defendant offers himself as a witness, he may be cross-examined by the counsel for the state the same as any other witness." Since the section was repealed, Utah Code of Criminal Procedure, ch. 15, § 1, 1980 Utah Laws 110, 111 (effective July 1, 1980), it is not relevant to this appeal.

**28.** *See, e.g., State v. Hansen,* 22 Utah 2d 63, 64–65, 448 P.2d 720, 721 (1968), *cert. denied,* 394 U.S. 992, 89 S.Ct. 1483, 22 L.Ed.2d 768. (1969); *State v. Younglove,* 17 Utah 2d 268, 269, 409

P.2d 125, 126 (1965); *State v. Kazda,* 14 Utah 2d 266, 268–69, 382 P.2d 407, 409 (1963).

**29.** 22 Utah 2d at 63, 448 P.2d at 720.

**30.** *Id.* at 65–66, 448 P.2d at 721–22.

**31.** Utah R.Evid. 21 (superseded September 1, 1983) (emphasis added).

**32.** 30 Utah 2d 343, 517 P.2d 1029 (1973), *cert. denied,* 416 U.S. 992, 94 S.Ct. 2403, 40 L.Ed.2d 771 (1974).

**33.** *Id.* at 345, 517 P.2d at 1031. *See also State v. Van Dam,* Utah, 554 P.2d 1324, 1326 (1976).

**34.** 30 Utah 2d at 345, 517 P.2d at 1031.

**35.** Utah R.Evid. Preliminary Note of Committee; Utah R.Evid. Compiler's Notes (Supp.1985).

that the probative value of admitting this evidence outweighs its prejudicial effect to the defendant, or (2) involved dishonesty or false statement, regardless of the punishment.

Defendant contends that because there is no statutory exception clause in the new rule there is an inconsistency between Rule 609(a)(1) and section 78–24–9. The State fails to address this argument. Defendant's position is well taken.[36]

Resolution of the conflict between Rule 609(a)(1) and section 78–24–9 requires us to look to this Court's rule-making powers. The Utah Supreme Court was given full rule-making power in 1943.[37] Section 78–2–4 of the Utah Code provides in pertinent part:

> The Supreme Court of the State of Utah has power to prescribe, alter and revise, by rules, for all courts of the State of Utah ... procedure in ... criminal actions and proceedings, including rules of evidence therein.... Such rules may not abridge, enlarge or modify the substantive rights of any litigant. Upon promulgation the Supreme Court shall fix the date when such rules shall take effect and thereafter all laws in conflict therewith providing for procedure in

courts only shall be of no further force and effect.

This power granted the Court has been utilized several times. For example, in 1950, the Rules of Civil Procedure were adopted.[38] Section 78–2–4 by its terms applies in this case since it expressly includes the power to adopt rules of evidence. The limitations on rules announced by this Court which supplant legislative enactments are that the Court may not change the substantive rights of any litigant; the rules must only be procedural in nature.[39] Although section 78–24–9 is in form a statutory privilege, the last sentence of the section providing, "[b]ut a witness must answer as to the fact of his previous conviction of felony," plainly goes only to the manner or process by which, in this case, the State seeks redress for violation of its laws. The same is patently true of Rule 609. Accordingly, to the extent the last sentence in section 78–24–9 is inconsistent with Utah R.Evid. 609, it is superseded.

The preliminary committee note to Utah's new Rules of Evidence states that the rules are to provide a fresh starting place for the law of evidence in this state. "Since the advisory committee generally sought to achieve uniformity between Utah's rules and the federal rules, this Court looks to the interpretations of the

---

**36.** *Terry v. Zions Coop. Mercantile Inst.*, Utah, 605 P.2d 314 (1979), *overruled on other grounds*, *McFarland v. Skaggs Cos.*, Utah, 678 P.2d 298, 304 (1984), does not reconcile the inconsistency between Rule 609(a) and section 78–24–9. First, the rationale in the *Terry* case, which dealt with Rule 21, does not apply to Rule 609(a) since under the new rule the exercise of discretion is mandatory in nature. *See id.* at 324. Second, the *Terry* case involved a prior conviction for shoplifting, a crime the Court there said is "generally considered as involving dishonesty." Thus, the Court did not consider the implications of section 78–24–9. *Id.* at 324 n. 36. *Accord State v. Montague*, Utah, 671 P.2d 187, 190–91 (1983). The advisory committee note to Rule 609 recognizes the conflict: "This rule is the federal rule, verbatim, and changes Utah law by granting the court discretion in convictions not involving dishonesty or false statement to refuse to admit the evidence if it would be prejudicial to the defendant. Current Utah law mandates the admission of such evidence." Committee Note to Rule 609, Utah R.Evid. (Supp.1985).

**37.** Act of March 6, 1943, ch. 33, § 1, 1943 Utah Laws 33.

**38.** *See* Wade, *Some of the Purposes and Effects of the New Utah Rules of Civil Procedure*, 2 Utah L.Rev. 12 (1952).

**39.** *Brickyard Homeowners Ass'n Management Comm. v. Gibbons Realty Co.*, Utah, 668 P.2d 535 (1983), though a civil case, sheds light on the substantive procedural distinction in the section 78–2–4 context. In that case, we recognized a standard to juxtapose substantive and procedural rules: "Practice and procedure encompass the course, form, manner, means, method, mode, order, process or steps by which a party enforces substantive rights or obtains redress for their invasion. 'Practice and procedure' may be described as the machinery of the judicial process as opposed to the product thereof." *Id.* at 539 (quoting *Avila South Condominium Ass'n v. Kappa Corp.*, Fla., 347 So.2d 599, 608 (1977)).

federal rules by the federal courts to aid in interpreting the Utah rules." [40] Since Rule 609 is the federal rule verbatim, and in light of the construction objectives just noted, we turn to the federal decisions interpreting the rule to aid in deciding this case.[41]

■ Rule 609(a)(1), under the strictest interpretation, mandates that an accused who testifies in a criminal case on his own behalf can be impeached by evidence of his prior felony convictions not involving dishonesty or false statement *only if* "the court determines that the probative value of admitting the evidence outweighs its prejudicial effect." [42] We find that the lower court abused its discretion in failing to exclude defendant's previous felony convictions.[43]

Factors to be considered when balancing probative value against prejudicial effect pursuant to Rule 609(a)(1) have been summarized to include:

[1] the nature of the crime, as bearing on the character for veracity of the witness.

[2] the recentness or remoteness of the prior conviction....

[3] the similarity of the prior crime to the charged crime, insofar as a close resemblance may lead the jury to punish the accused as a bad person.

[4] the importance of credibility issues in determining the truth in a prosecution tried without decisive nontestimonial evidence....

[5] the importance of the accused's testimony, as perhaps warranting the exclusion of convictions probative of the accused's character for veracity....[44]

It is universally held that the prosecution under Rule 609(a)(1) has the burden of persuading the court that the probative value of admitting the convictions, as far as shedding light on the defendant's credibility, outweighs the prejudicial effect to the defendant.[45] Yet Mr. Gunnarson offered no evidence that introduction of the convictions was more probative than prejudicial. The crime of assault with intent to commit rape does not inherently reflect on defend-

---

**40.** *State v. Gray,* 717 P.2d 1313, 1316 (Utah 1986). To the extent that our previous opinions are inconsistent with Rule 609, they are overruled.

**41.** Rule 609 was one of the most hotly debated federal rules to be adopted, and 609(a)(1) represents a carefully considered compromise between those factions that felt impeachment by any prior conviction was proper and those that felt only convictions of crimes involving dishonesty or false statement should be admitted for impeachment purposes. *United States v. Smith,* 551 F.2d 348, 360–61 (D.C.Cir.1976).

**42.** 32B Am.Jur.2d *Federal Rules of Evidence* § 419 (1982 & Supp.1985).

**43.** Our determination makes it unnecessary to address whether the lack of explicit findings on the record implies a failure to exercise the discretion conferred upon the trial court by Rule 609 or whether the trial court must provide an on-the-record explanation of its Rule 609 findings. As stated in *Smith,* however, "it must be obvious to any careful trial judge that an explicit finding in the terms of the Rule can be of great utility, if indeed not required, on appellate review." 551 F.2d at 357 n. 17 (citations omitted). *See* 32B Am.Jur.2d *Federal Rules of Evidence* § 419 (1982).

**44.** 32B Am.Jur.2d *Federal Rules of Evidence* § 420 (1982) (footnotes omitted). *Accord Cook,* 608 F.2d at 1185 n. 8. In the *Terry* case, where we discussed the relationship between old Rules of Evidence 21 and 45, we stated:

Consideration of the testimony's prejudicial effect is especially pertinent when the witness is the defendant in a criminal prosecution or a party in a civil case. This is particularly important when, as here, the prior conviction is for the same type of crime involved in the matter under present consideration. *In this type of situation, the probative value of the evidence as affecting the party's credibility will rarely outweigh the resulting confusion of the issues in dispute and the prejudice to the party.* 605 P.2d at 325 (emphasis added; footnote omitted).

**45.** *See, e.g., Lipscomb,* 702 F.2d at 1055; *United States v. Smith,* 551 F.2d at 360. *See also* 32B Am.Jur.2d *Federal Rules of Evidence* § 419 (1982); *Annot.,* 39 A.L.R.Fed. 570, 594 (1978). It is particularly significant that the prosecutor at argument on defendant's motion below relied upon case law established prior to our adoption of Rule 609(a). At argument, the prosecutor specifically relied upon *State v. McCumber,* Utah, 622 P.2d 353 (1980), and *State v. Harless,* 23 Utah 2d 128, 459 P.2d 210 (1969).

ant's character for truth and veracity. Instead, it sheds about the same light as any felony involving moral turpitude. Particularly significant in our balancing process is the remoteness of the prior convictions. Defendant's previous convictions were in 1975 and 1976. Defendant's trial in this case was held in December of 1984. Thus, the convictions at the time of defendant's trial were between eight and nine-plus years old. Had the convictions been ten years or older, Rule 609(b) would have undoubtedly prevented their admission. The two convictions were for assault with intent to commit rape. Such convictions would be extremely prejudicial and tend to inflame the jury in any case dealing with sex crimes, particularly sex crimes involving a child. Finally, the accused's testimony and the importance of credibility in this case were critical in determining whose version of the facts was correct since the prosecution's case included no decisive nontestimonial evidence.

Although the district court erred in failing to exclude defendant's prior convictions, the abuse of discretion under Rule 609(a)(1) does not reach constitutional proportion. In *State v. Fontana,*[46] we discussed the harmless error standard for cases involving error not rising to constitutional dimensions:

Rule 30 of the Utah Rules of Criminal Procedure directs that "[a]ny error, defect, irregularity or variance which does not affect the substantial rights of a party shall be disregarded." § 77–35–30. We have interpreted this rule to mean

that error is reversible only if a review of the record persuades the court that without the error there was "a reasonable likelihood of a more favorable result for the defendant."[47]

In view of the fact that defendant filed a notice of alibi and then withdrew the notice subsequent to the rendering of the decision on his motion *in limine,* and after reviewing the record upon which defendant was convicted, we cannot say that the judgment was not substantially swayed by the error. Thus, it is impossible to say that defendant's substantial rights were not affected by the error. The critical testimony upon which the prosecution relied came chiefly from two witnesses, one of whom was shown to have had a past sexual relationship with defendant. There was no corroborating nontestimonial evidence to help aid the trier of fact. After review of the record, we are not convinced that had defendant testified, the outcome in this case would necessarily have been the same.[48] Therefore, defendant's conviction is reversed, and the case is remanded for a new trial.

STEWART, HOWE, DURHAM and ZIMMERMAN, JJ., concur.

**46.** Utah, 680 P.2d 1042 (1984).

**47.** *Id.* at 1048. *See also California v. Chapman,* 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967); *State v. Hutchison,* Utah, 655 P.2d 635, 636 (1982). *But see State v. Tucker,* Utah, 709 P.2d 313, 316 (1985) (implying the standard is proper in disposing of constitutional errors).

**48.** Defendant's brief appears to claim that the trial court's refusal to grant the motion *in limine* with respect to the previous convictions amounted to a penalty for exercising his constitutional right to testify. In *State v. McCumber,* we stated in regard to the Utah Constitution:
  Defendant misconstrues the nature of the constitutional right in question. The Constitution

affords an accused a choice: He may refuse to become a witness, or he may elect to take the witness stand and testify in his own behalf.... The defendant having exercised his constitutional right to remain silent and not testify, he cannot now be heard to complain that the court forced that choice upon him and thereby denied him due process.
Utah, 622 P.2d 353, 358 (1980) (footnote omitted). Several federal cases have reached the same conclusion. *See, e.g., United States v. Johnson,* 588 F.2d 961, 963 (5th Cir.), *cert. denied,* 440 U.S. 985, 99 S.Ct. 1801, 60 L.Ed.2d 248 (1979).