2001 UT 88

James EDDY, Plaintiff and Appellee,

v.

ALBERTSON'S, INC., Defendant and Appellant.

No. 990871.

Supreme Court of Utah.

Oct. 19, 2001.

Randall W. Richards, Ogden, for plaintiff.

Stephen G. Morgan, Mitchell T. Rice, Salt Lake City, for defendant.

DURHAM, Justice:

¶ 1 Plaintiff James G. Eddy (James I), on behalf of his minor son, filed suit against defendant Albertson's Inc. for false imprisonment and intentional infliction of emotional distress. A jury found in favor of James I

only with respect to the first claim. Albertson's appeals, arguing that the trial court erred in denying its motion for directed verdict and/or motion for judgment notwithstanding the verdict, and in failing to instruct the jury regarding a beer retailer's right to detain an intoxicated minor pursuant to section 32A–12–221 of the Utah Code. We affirm.

## BACKGROUND

¶ 2 On the evening of Friday, October 13, 1995, James Eddy II (James II) and Will Emdin, both minors, went to an Albertson's grocery store to meet their friend Reannon. Reannon, also a minor, was working at Albertson's that evening. Prior to the meeting, James II had consumed some beer but was not showing signs of physical impairment. Will had not consumed any alcohol. At Albertson's, James II and Will talked inside the store with Reannon. Then, pursuant to a prior arrangement, James II and Will took Reannon's car keys, went to Will's car, which was parked next to Reannon's in a far corner of the parking lot, transferred some beer from Will's car to Reannon's, and closed the trunk of Reannon's car.

¶ 3 At that point, two Albertson's employees approached James II and Will. The employees asked to search the cars, specifying that suspicion of shoplifting was the basis for the search. According to the employees, they were looking for Miller High Life beer; they found only Old Milwaukee beer, a brand not carried by Albertson's. During the encounter, the employees noticed that James II was intoxicated. They told James II and Will to return to the store, but did not state a reason.

¶ 4 James II refused. Instead, he got into the passenger side of Will's car, but the employees grabbed him by the arms and shoulders and forcibly removed him. They proceeded to drag James II through the parking lot back into the store. During this encounter, James II struggled and asked to be released. Once inside, James II was physically restrained in the store by Keith Haslam, Albertson's assistant store director, until police arrived. James II was cited for consumption of alcohol and released into his

father's custody. Will, who had returned to the store voluntarily, was not cited for any offenses.

¶ 5 The following day, James I, James II's father, discussed the incident with Keith. Subsequently, James I filed suit on behalf of James II against Albertson's for false imprisonment and intentional infliction of emotional distress.

¶ 6 Prior to trial, Albertson's asked the court to instruct the jury regarding a beer retailer's right to detain an intoxicated minor pursuant to section 32A–12–221 of the Utah Code. The court denied this request. However, at trial the jury was instructed with respect to the citizen's arrest statute, section 77–7–3 of the Utah Code.

¶ 7 James II and Will testified at trial that they were taken back into the store for shoplifting. Will's specific testimony was, "the employees said they needed to search our car because they thought we had stolen some ... beer." According to his testimony, the Albertson's employees never acknowledged that he and James II had not stolen any Albertson's beer, even though they had found none in the search. In addition, Codi Ann Stevens, an eyewitness, testified that when she asked employees working at the front of the store why the two Albertson's employees were going after James II and Will, she was told "because they thought [they] had shoplifted." Scott Robertson, one of the two Albertson's employees who brought James II back into the store, testified that "[i]t started out as a shoplifting thing...." James I testified that when he discussed the incident with Keith, the latter said, "[Albertson's] had a right to protect [itself] against shoplifters." In fact, according to James I, Keith did not mention any other reason for detaining James II.

¶ 8 Prior to jury deliberations, Albertson's made a motion for a directed verdict or, alternatively, for a judgment notwithstanding the verdict. The trial court denied the motion. The jury found that Albertson's falsely imprisoned James II, but did not find intentional infliction of emotional distress. Accordingly, the jury awarded $5616 in damages and costs. This appeal followed.

## ANALYSIS

### I. MOTION FOR DIRECTED VERDICT AND/OR MOTION FOR JUDGMENT NOTWITHSTANDING THE VERDICT

¶ 9 Albertson's appeals the trial court's denial of its motion for a directed verdict and motion for judgment notwithstanding the verdict on two grounds. First, Albertson's claims there was insufficient evidence to find that it falsely imprisoned James II. In addition, Albertson's contends it had the right to detain James II, an intoxicated minor, under section 77–7–3 of the Utah Code.

#### A. Sufficiency of the Evidence

¶ 10 A judgment should be vacated only if, after viewing the evidence and all reasonable inferences in the light most favorable to the prevailing party, the appellate court concludes that the evidence is insufficient to sustain the verdict. *Franklin v. Stevenson*, 1999 UT 61, ¶ 6, 987 P.2d 22. It is undisputed that the two Albertson's employees suspected James II and Will of stealing some beer and searched the cars accordingly. James II and Will both testified they believed the search and subsequent detention occurred in connection with suspicion of stealing Albertson's beer. In addition, James II and Will both testified that James II was forcibly returned to the store for shoplifting. This testimony was supported by the testimony of an eyewitness and one of the employees involved in the search. Furthermore, after the incident, Keith told James I the store "had a right to protect [itself] against *shoplifters*." (emphasis added).

¶ 11 Based on this evidence, it was reasonable for the jury to conclude that the two Albertson's employees were acting on suspicion of shoplifting, and that under the circumstances the suspicion was unfounded and could not give rise to a right to arrest and detain.

#### B. Citizen's Arrest

¶ 12 Albertson's relies alternatively on the theory that it had a citizen's right to detain James II because he was engaged in a

public offense in the presence of its employees. The "citizen's arrest" statute provides, in pertinent part, that "[a] private person may arrest another: (1) For a *public offense* committed by another in his presence...." Utah Code Ann. § 77–7–3(1) (1995)(emphasis added). However, for such an arrest to be lawful, section 77–7–6(1) of the Utah Code requires that "the person making the arrest shall inform the person being arrested of his intention, cause and authority to arrest him." Nevertheless, there are statutory exceptions to this notice requirement. In particular, "such notice shall not be required when ... the person being arrested is actually engaged in the commission of, or an attempt to commit, an offense[.]" Utah Code Ann. § 77–7–6(1)(b) (1995).

¶ 13 It is undisputed that at the time of the incident James II, an intoxicated minor, had transferred alcohol to Reannon's car in violation of sections 32A–12–209(1) and 32A–12–203(1) of the Utah Code. Albertson's argues that because these acts were committed in the presence of its employees, it had the right to arrest James II under the citizen's arrest statute, and that its employees were not required to give James II notice of their "intention, cause and authority" to arrest him. In fact, Albertson's contends that under these circumstances, it was entitled to a directed verdict under sections 77–7–3 and –6 of the Utah Code.

¶ 14 In *McFarland v. Skaggs,* 678 P.2d 298 (Utah 1984), we explained that the notice of "intention, cause and authority" of section 77–7–6 of the Utah Code must be given "at the time the prisoner is detained or the arrest is effected, rather than sometime later during the time of detention," otherwise, the arrest falls "short of the statutory mandate" and the defendant "fail[s] to perfect whatever privilege it might have ... to arrest plaintiff" for the offense. *Id.* at 302.

¶ 15 In *McFarland,* the plaintiff was also suspected of shoplifting. A Skaggs employee accosted the plaintiff in the parking lot of the grocery store and a scuffle ensued. *Id.* at 299. After the confrontation, the plaintiff returned to the store where the allegation of shoplifting was determined to be false. *Id.* at 300. The Skaggs employee never in-

formed the plaintiff that he was being placed under citizen's arrest for assault or any other offense. *Id.* In that case, this court found that the exceptions to the notice requirement did not apply because the "arrest was not accomplished with conformance to [section 77–7–6]." *Id.* at 302.

¶ 16 In this case, the trial court fully and accurately instructed the jury regarding the citizen's arrest statute. In addition, the jury heard testimony that the Albertson's employees did not become aware of James II's admitted public offenses until *after* they had confronted him in the parking lot to investigate their suspicion of shoplifting. Finally, there was no evidence that anyone told James II he was being detained for an offense not related to shoplifting. Accordingly, the exceptions to the notice requirement do not apply in this case either. The jury was justified in concluding that the Albertson's employees detained James II on suspicion of shoplifting and that they failed to satisfy the citizen's arrest statutory requirements. While there was other evidence supportive of Albertson's version of events, the jury was entitled to make its own judgments on controverted testimony regarding the facts.

## II. JURY INSTRUCTION ON BEER RETAILER'S RIGHT TO DETAIN AN INTOXICATED MINOR

¶ 17 Albertson's also argues that the trial court erred in refusing to instruct the jury on a beer retailer's right to detain an intoxicated minor pursuant to section 32A–12–221 of the Utah Code. "We review a judge's refusal to give a jury instruction for correctness, as it is a question of law." *Robinson v. All–Star Delivery Inc.,* 1999 UT 109, ¶ 9, 992 P.2d 969.

¶ 18 At trial, Albertson's asked the court to instruct the jury regarding the Alcoholic Beverage Control Act, section 32A–12–221 of the Utah Code, which provides:

(1) Any state store employee, package agent, licensee, or permittee or the employee of any of these, or any beer retailer or his employee, who has reason to believe that a person in the facility where liquor or beer is sold is in violation of Section 32A–12–209, 32A–12–210, or 32A–12–211 may, for the purpose of informing a peace officer of the suspected violation, detain the

person and hold any form of identification presented by the person in a reasonable manner and for a reasonable length of time.

¶ 19 Albertson's argues that the parking lot is a part of its facility within the meaning of the statute. Therefore, Albertson's contends, it lawfully detained James for intoxication until the police arrived. We disagree.

¶ 20 The statutory language "in the facility where [alcohol] is sold" does not extend, in our view, to the far reaches of the parking lot or other property surrounding the retail building in which alcohol is sold. The statute's language reflects the legislature's concern that persons working in businesses that sell alcohol should be able to assist in the enforcement of alcohol-related violations by persons who are inside their stores. Specifically, the statute protects such persons from liability for unlawful detention. The need for such authorization and protection inside a retail establishment, where alcohol sales occur, seems obvious. A basis for extending it to include all surrounding property is far less obvious, and certainly is not reflected in the language "in the facility where [alcohol] is sold."

### III. EDDY'S REQUEST FOR ATTORNEY'S FEES

¶ 21 Plaintiff requests attorney's fees for the first time in his reply brief to this court. It is well established that "we will not consider matters raised for the first time in the reply brief." *Coleman v. Stevens*, 2000 UT 98, ¶ 9, 17 P.3d 1122. Thus we decline to consider this request on appeal.

### CONCLUSION

¶ 22 We conclude that there was sufficient evidence to support the jury's verdict and that the trial court committed no errors of law. Accordingly, we affirm.

¶ 23 Chief Justice HOWE, Associate Chief Justice RUSSON, Justice DURRANT, and Justice WILKINS concur in Justice DURHAM's opinion.