2005 UT App 38

**Kelly SMITH and Lisa Nielsen, individually and as heirs of Jason Kelly Smith, deceased, Plaintiffs and Appellants,**

v.

**HALES & WARNER CONSTRUCTION, INC., a Utah corporation; and Corporation of the Presiding Bishop of the Church of Jesus Christ of Latter-day Saints, a Utah corporation, Defendants and Appellees.**

**No. 20030901–CA.**

Court of Appeals of Utah.

Jan. 27, 2005.

Edward P. Moriarity, Jeffrey D. Gooch, Moriarity Gooch Badaruddin & Booke LL, and Justin T. Ashworth, Ashworth Hunt, Salt Lake City, and Shandor S. Badaruddin, Missoula, Montana, for Appellants.

Robert R. Wallace, Kirton & McConkie, Salt Lake City, for Appellee Corporation of the Presiding Bishop of the Church of Jesus Christ of Latter-day Saints.

Eric K. Davenport and Richard K. Glauser, Smith & Glauser PC, Salt Lake City, for Appellee Hales & Warner Construction, Inc.

Before Judges GREENWOOD, JACKSON, and ORME.

## OPINION

GREENWOOD, Judge:

¶ 1 Plaintiffs Kelly Smith and Lisa Nielsen, heirs of Jason Smith (Decedent), appeal the trial court's grant of Defendants' motions for

summary judgment on Plaintiffs' claim of wrongful death. We affirm.

## BACKGROUND [1]

¶2 On May 7, 1999, the Corporation of the Presiding Bishop of the Church of Jesus Christ of Latter-day Saints (CPB) contracted with Hales & Warner Construction, Inc. (H & W) to build a church on CPB's property in Highland, Utah. The CPB–H & W contract allowed CPB to reject any subcontractor selected by H & W. CPB hired an architect to act as an intermediary between CPB and H & W. H & W then subcontracted with Brent Reynolds Construction, Inc. (BRC) to perform "[a]ll of the Section 06100 Rough Carpentry complete, including all labor and materials, all material handling and crane time, except wood trusses to be supplied by others but installed by BRC." [2] Subsequently, BRC subcontracted with Egbert Construction, Inc. (EC) to provide all rough carpentry labor on section 06100.

¶3 EC hired and trained Michael Lewis, José Lewis, and Decedent to frame the church. On August 13, 1999, the three men were raising a wooden framed wall under the immediate direction of an EC supervisor. The wall fell as the men were attempting to install bolt studs designed to hold the wall in place. While the other two framers got clear, Decedent appeared to try to catch the falling wall. The wall fell on Decedent, killing him. Thereafter, Plaintiffs brought a wrongful death action against CPB and H & W, alleging that CPB and H & W negligently exercised authority and control over the construction of the church, resulting in Decedent's death.

¶4 Both Defendants moved for summary judgment, arguing that they did not exercise control over Decedent so as to be liable for his death and that only EC trained and educated the framers on how to raise a framed wall. In its ruling, the trial court determined that (1) no evidence existed showing that H & W or CPB were involved in, or interfered with, the hiring, training, or education of the framers; (2) the framers were under the direction, supervision, instruction, and control of EC; and (3) while H & W had a representative, Maurice Egbert,[3] on CPB's property when Decedent was killed, the representative was inside a trailer and had no involvement in the framing. Accordingly, the trial court granted Defendants' summary judgment motions.

## ISSUE AND STANDARD OF REVIEW

¶5 Plaintiffs aver that the trial court erred when it granted Defendants' motions for summary judgment. Specifically, Plaintiffs argue that Defendants' protection from suit as employers of independent contractors is destroyed by Defendants' retention of control over the independent contractors. Thus, the issue before us is whether Defendants are liable under the doctrine of "retained control."

¶6 "We review the district court's grant of summary judgment for correctness, according no deference to the court's legal conclusions." *Thompson v. Jess*, 1999 UT 22,¶ 12, 979 P.2d 322 (quotations and citations omitted). We view facts and all reasonable infer-

---

1. The trial court noted, and Plaintiffs agreed during oral argument before the trial court, that there were no material issues of fact. Furthermore, after the trial court entered its order for summary judgment, Plaintiffs did not submit a motion to amend or otherwise bring to the trial court's attention any contention that the facts cited or omitted in the court's order were material and contested. " '[I]n order to preserve an issue for appeal[,] the issue must be presented to the trial court in such a way that the trial court has an opportunity to rule on that issue.' " *438 Main Street v. Easy Heat*, 2004 UT 72,¶ 51, 99 P.3d 801 (quoting *Brookside Mobile Home Park, Ltd. v. Peebles*, 2002 UT 48,¶ 14, 48 P.3d 968) (alterations in original). "Issues that are not raised at trial are usually deemed waived." *Id.*

Furthermore, having stipulated that there were no disputed issues of material fact, Plaintiffs are now bound. *See DLB Collection Trust v. Harris*, 893 P.2d 593, 595 (Utah Ct.App.1995). Therefore, we rely to a large degree on the trial court's description of the facts and do not consider Plaintiffs' attempt, on appeal, to present disputed facts.

2. BRC was a third-party defendant, but was not involved in the trial court's grant of summary judgment for CPB and H & W, nor in this appeal.

3. Maurice Egbert has no relationship to EC.

ences in the light most favorable to the non-moving party. *See Glover v. Boy Scouts of Am.*, 923 P.2d 1383, 1384 (Utah 1996). Furthermore, "[f]or a moving party to be entitled to summary judgment, it must establish a right to judgment based on the applicable law as applied to the undisputed facts." *Smith v. Four Corners Mental Health Ctr., Inc.*, 2003 UT 23, ¶ 24, 70 P.3d 904.

## ANALYSIS

¶ 7 H & W and CPB's liability is contingent upon their relationship with each other and with Decedent. "Utah adheres to the general common law rule that 'the employer of an independent contractor is not liable for physical harm caused to another by an act or omission of the contractor or his servants.' " *Thompson*, 1999 UT 22 at ¶ 13, 979 P.2d 322 (quoting Restatement (Second) of Torts § 409 (1965)) (additional citation omitted). However, if the employer retains sufficient control over the independent contractor then liability may attach to the employer. *See id.* at ¶ 14.

¶ 8 The parties agree that *Thompson's* discussion of the "retained control" doctrine controls the outcome of this case. In *Thompson*, part of the plaintiff's leg was amputated after a pipe he was installing slipped and struck him. *See id.* at ¶ 5. The defendant's only control over the accident was her direction "that the pipe be installed over the pipe stub." *Id.* at ¶ 24. Affirming the defendant's motion for summary judgment, the Utah Supreme Court stated that the defendant's actions "amounted merely to control over the desired result, which is insufficient to come within the retained control doctrine." *Id.* Moreover, the court adopted the "retained control" exception to Utah's general common law for independent contractors, *see id.* at ¶ 18, defining the "retained control" doctrine as,

> a narrow theory of liability applicable in the unique circumstance where an employer of an independent contractor exercises enough control over the contracted work to give rise to a limited duty of care, but not

enough to become an employer or master of those over whom the control is asserted. The duty in such situations is one of reasonable care under the circumstances and is confined in scope to the control asserted. *Id.* at ¶ 15.

¶ 9 The court went on to elaborate on the contours of the standard. *See id.* at ¶ 18. The duty of care will not arise "unless the principal has 'actively participated' in the project." *Id.* (citation omitted). This active participation standard requires that "a principal employer must have exercised affirmative control over the method or operative detail of" the work that caused the injury. *Id.* at ¶ 20. Looking to the Restatement for guidance,[4] the court noted,

> "[T]he employer must have retained at least some *control over the manner* in which the work is done. It is not enough that he has merely a general right to order the work stopped or resumed, to inspect its progress or to receive reports, to make suggestions or recommendations which need not necessarily be followed, or to prescribe alterations and deviations."

*Id.* (quoting Restatement (Second) of Torts § 414 cmt. c. (1965)) (emphasis added). Rather, to trigger the exception "the principal employer must exert such control over the means utilized that the contractor cannot carry out the *injury-causing aspect of the work* in his or her own way." *Id.* at ¶ 21 (emphasis added). "A typical instance in which such an exertion of control might occur is 'when a principal contractor entrusts a part of the work to subcontractors, but himself or through a foreman superintends the entire job.' " *Id.* (quoting Restatement (Second) of Torts § 414 cmt. b. (1965)).

¶ 10 Plaintiffs argue that in this case "control over the manner" of the "injury-causing aspect of the work" relates broadly to all carpentry activities, including framing, of the church. On the other hand, Defendants urge a more narrow view of the "injury-causing aspect of the work," as including only the manner of framing the wall that fell on Dece-

---

4. Plaintiffs argue that the Utah Supreme Court's reference to the Restatement was mere dicta. We disagree. The Utah Supreme Court adopted the Restatement's standard for the "retained control" doctrine. *See Thompson v. Jess,* 1999 UT 22, ¶ 18, 979 P.2d 322.

dent. The trial court interpreted "injury-causing aspect" narrowly, finding that neither H & W nor CPB "exerted control over the means utilized by" the framers "at the time of the [a]ccident." We agree with the trial court that under *Thompson,* retained control requires active participation in the method or operative detail of the injury-causing activity in order to impose liability.

¶ 11 As to CPB, Plaintiffs argue that the contractual provision giving CPB the power to reject subcontractors chosen by H & W connotes that CPB retained control over Decedent's work. A similar scenario was presented in *Miller v. Great Lakes Steel Corp.,* 112 Mich.App. 122, 315 N.W.2d 558, 560 (1982). In that case, an employee of a third-party defendant contractor was injured while working on the defendant's property. *See id.* at 559. The defendant's contract with the contractor provided

> that [the defendant] would have the right to inspect the site and make safety investigations, to *reject subcontractors* chosen by [the contractor], to make changes in specifications and design, and to take over the completion of work if there was a failure on the part of [the contractor] to perform.

*Id.* at 560 (emphasis added). Notwithstanding the defendant's contractual powers, the Michigan Court of Appeals reasoned that such authority did not mean that the defendant "retained the right to exercise any substantive control over how [the contractor] performed its work." *Id.* Likewise, in the instant case, CPB's power to reject subcontractors is insufficient to come within the "retained control" doctrine. This case is even more attenuated than *Miller,* because the actual supervisor of Decedent, EC, had a subcontract with BRC, which in turn was a subcontractor with the general contractor, H & W. Furthermore, the contract between CPB and H & W does not establish an employer-employee relationship, as argued by Plaintiffs. The contract established a typical owner-independent contractor relationship where H & W was responsible for all particulars of the building project and CPB had no control over H & W employees.

¶ 12 Further eroding CPB's potential liability, no CPB employee exercised any control at the time of the accident as none were present. The general oversight of the project by the architect, acting as CPB's agent, likewise, was not detailed enough to include items such as framing. In sum, CPB did not actively participate in the injury-causing aspect of Decedent's work.[5]

¶ 13 Regarding H & W, their on-site representative, Maurice Egbert, was in a trailer at the time of the accident. The supervisor on site at that time was an employee of EC. Other than generally overseeing the work performed by various subcontractors, there is no evidence Mr. Egbert trained or instructed Decedent about how to build or position the wall frames in place. Plaintiffs contend that deposition testimony of Brent Reynolds, president of BRC, indicates H & W's representative, Maurice Egbert, actively supervised Decedent and the other workers. We agree with the trial court that Reynolds's testimony does not establish such control. Much of Reynolds's testimony is hearsay, as noted by the trial court, because it is secondhand. *See* Utah R. Evid. 801(c). The nonhearsay portion of Reynolds's testimony establishes only that Maurice Egbert urged EC and its employees with contract specifications for wall height and completion time frames, but left to them the manner of compliance. As confirmed by the testimony of Michael Lewis, one of Decedent's coworkers, Maurice Egbert did not train the men on how to do the framing. Indeed, like CPB, no H & W employee exerted any control over Decedent at the time of the accident because none were present. As the trial court found, "there is no evidence that [H & W] or the CPB instructed [EC] or its employees (or BRC or its employees) to do the work being performed at the time of the [a]ccident in a different manner or by way of a different method." Thus, H & W

---

5. Plaintiffs argue for the first time in their reply brief that CPB is liable as a landowner to Decedent, an invitee on its property. "It is well established that 'we will not consider matters raised for the first time in the reply brief.' " *Eddy v. Albertson's, Inc.,* 2001 UT 88, ¶ 21, 34 P.3d 781 (citation omitted). Therefore, we do not address Plaintiffs' landowner liability theory.

did not actively participate in the injury-causing aspect of Decedent's work.

## CONCLUSION

¶ 14 Plaintiffs argue that this court should reverse the trial court on the basis that CPB and H & W retained control over the framing of the church. However, under the "retained control" doctrine as discussed in *Thompson v. Jess*, 1999 UT 22, 979 P.2d 322, we conclude that neither Defendant actively participated in the method or operative detail of the injury-causing aspect of Decedent's work. As a result, the general Utah common law rule that shields employers of independent contractors from liability resulting from an act or omission of a contractor or its employee remains undisturbed in this case. Because Plaintiffs have not presented evidence that satisfies the "retained control" exception, the trial court correctly granted Defendants' motions for summary judgment.

¶ 15 Accordingly, we affirm the trial court's order of summary judgment.

¶ 16 I CONCUR: NORMAN H. JACKSON, Judge.

ORME, Judge (concurring in the result):

¶ 17 I agree the judgment should be affirmed, but I think the question is a closer one as concerns H & W than the main opinion would suggest. (It is not close at all as concerns CPB.) I have two principal areas of disagreement with the majority. First, I disagree with footnote 1. A party who argues on summary judgment that the material facts are not in dispute is not bound to any particular version of the facts. *See Wycalis v. Guardian Title*, 780 P.2d 821, 825 (Utah Ct.App.1989), *cert. denied*, 789 P.2d 33 (Utah 1990). Such a party is really arguing that his view of the facts is undisputed and entitles him to judgment—or at least to the defeat of the other side's motion—but, in the alternative, if his view of the facts is not accepted, then that there are disputes of fact that preclude summary judgment. *See id.* Plaintiffs may have overstated the matter in arguing in general terms that the facts were not in dispute, but I simply do not see that

Plaintiffs ever stipulated, in a binding way, to particular facts.

¶ 18 Second, I do not believe the retained control doctrine is as narrow as the majority believes it to be, although I agree it is not as open-ended as Plaintiffs contend. I see no need to wrestle with the exact scope of the doctrine, however, because in this case the pertinent nonhearsay evidence that was properly before the trial court when it considered the motions for summary judgment, when properly understood in context, is simply insufficient to create a dispute of material, i.e., legally significant, fact.